NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GOOGLE LLC,**
*Appellant*

**v.**

**NEONODE SMARTPHONE LLC,**
*Appellee*

---

2023-1638

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-01041.

---

Decided:  July 18, 2024

---

DANIEL C. TUCKER, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Reston, VA, argued for appellant. Also represented by ERIKA ARNER, Washington, DC; KEVIN D. RODKEY, Atlanta, GA.

PHILIP GRAVES, Graves & Shaw LLP, Los Angeles, CA, argued for appellee.  Also represented by GREER N. SHAW; ROCCO MAGNI, BRIAN MELTON, Susman Godfrey LLP, Houston, TX; KALPANA SRINIVASAN, Los Angeles, CA.

---

Before LOURIE, PROST, and STARK, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Google LLC appeals from the final written decision of the U.S. Patent and Trademark Office Patent Trial and Appeal Board ("the Board") concluding that claims 1–7, 9, 12, 13, and 15–17 of U.S. Patent 8,095,879 ("the '879 patent") had not been shown to be unpatentable as obvious under 35 U.S.C. § 103. *Google LLC v. Neonode Smartphone LLC*, No. IPR2021-01041 (P.T.A.B. Jan. 11, 2023), J.A. 1–40 ("*Decision*"). For the following reasons, we *affirm*.

## BACKGROUND

Neonode Smartphone LLC ("Neonode") owns the '879 patent, which is generally directed to touch-sensitive user interfaces for mobile handheld computer units, *e.g.*, cell phones. '879 patent at Abstract. Claim 1, the only independent claim, recites:

1. A non-transitory computer readable medium storing a computer program with computer program code, which, when read by a mobile handheld computer unit, allows the computer to present a user interface for the mobile handheld computer unit, the user interface comprising:

[1a] a touch sensitive area in which a representation of a function is provided,

[1b] wherein the representation consists of only one option for activating the function and

[1c] wherein the function is activated by a multi-step operation comprising (i) an object touching the touch sensitive area at a location where the representation is provided and then (ii) the object gliding along the touch sensitive area away from the touched location,

> **[1d]** wherein the representation of the function is not relocated or duplicated during the gliding.

*Id.* at col. 6, ll. 45–59 (numbering added).  The only claim limitation disputed in this appeal is that which recites: "the object *gliding* along the touch sensitive area *away* from the touched location," *id.* (emphases added), which the parties and Board refer to as "limitation 1c."  *See Decision*, J.A. 15.  Thus, whether the claim as a whole is invalid for obviousness settles down to whether limitation 1c was obvious.

Google petitioned for, and the Board instituted, *inter partes* review ("IPR") of claims 1–7, 9, 12, 13, and 15–17 of the '879 patent.  Google argued, *inter alia*, that the claims are unpatentable as obvious over Robertson[1] and Maddalozzo.[2]  *Id.* at J.A. 7.  Robertson describes an early-90s desktop computer using an "X window system."  J.A. 2693.  That system includes gesture-based "XButtons," which appear on the user interface in small rectangles with accompanying editable text.  *See id.*  According to Robertson:

> XButtons support mouse-based or pen-based gestural input in addition to simple "pressing".  Whenever a user gestures at an XButton, a gesture parser interprets mouse or pen movement and classifies it as one of a small set of easily differentiated gestures (*flick* left, *flick* right, *flick* up, *flick* down, click, rubout, check, or *insert*).  Once a gesture has been identified, the XButton executes the

---

[1]    George G. Robertson et al., *Buttons as First Class Objects on an X Desktop*, UIST: Proceedings of the ACM Symposium on User Interface Software and Technology: Hilton Head, South Carolina, USA, 35–44 (1991), J.A. 2683–702.

[2]    U.S. Patent 7,768,501.  Google only relied on Maddalozzo to argue that the preamble, which is not at issue here, would have been obvious.  *Decision*, J.A. 15 n.7.

> appropriate action (i.e., there is an action for each of the gestures). During the gesture, feedback is provided in the form of a mouse track displayed on the screen. As soon as the gesture is completed, the feedback is erased.

*Id.* at 2697 (emphases added). Robertson further teaches that "[a]lthough a gesture must start in an XButton . . . it can move outside the XButton." *Id.* at 2701.

During the IPR proceedings, neither party proposed any explicit claim constructions. *Decision*, J.A. 10. But in its Patent Owner Response, Neonode raised various arguments regarding proper construction of the "gliding . . . away" limitation in the context of the asserted prior art, to which Google responded in its Reply. *Id.*

In its decision, the Board concluded that it need not construe any term of the asserted claims explicitly and, to the extent a term needed to be interpreted, the Board would do so in the context of the prior art. *Id.* On the merits, the Board concluded that Google had failed to show by a preponderance of the evidence that the claim would have been obvious over the cited prior art. *Id.* at 15. Specifically, the Board concluded that Google had not shown that Robertson's "flick" gesture renders obvious limitation 1c. *Id.* at 25–26. In reaching that conclusion, the Board implicitly adopted Neonode's claim construction that, based on amendments made during prosecution of the '879 patent, the claimed "gliding . . . away" is clearly intended to cover what is known today as a "swipe" gesture as opposed to a "drag-and-drop" operation described in the prior art. *Id.* at 26. It determined that the claimed gesture "is more specific than merely an on-screen *movement* from one location to another." *Id.* (emphasis added).

The Board therefore concluded that a person of ordinary skill in the art would not have understood Robertson's "flick" gesture, which was not described in any more

specific terms, to comprise "gliding . . . away," crediting Neonode's expert's testimony, dictionary definitions, and evidence that modern Google developers maintain a meaningful distinction between "flick" and "swipe" gestures. *Id.* at 28.

The Board also concluded that Robertson's "insert" gesture, which it found would have been understood "to be similar to the way a person would draw a caret to indicate an insertion within existing text," did not comprise "gliding . . . away." *Id.* at 29. The Board again credited Neonode's expert's testimony and found that Robertson's "insert" gesture "would involve two brief, connected movements with a sharp peak, neither of which would be a continuous gliding or swiping motion." *Id.*

Accordingly, the Board held that Google had failed to show the challenged claims to be unpatentable.

Google timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(c).

## DISCUSSION

On appeal, Google argues only that (1) the Board erred in construing "gliding . . . away," and (2) under the correct construction, in which "gliding . . . away" simply requires "movement," Robertson renders obvious the limitation. Google Br. at 2, 49.[3] Because we agree with the Board's construction of the disputed term, we need not consider Google's second argument.

Claim construction is a question of law reviewed *de novo*. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 808 (Fed. Cir. 2021). We review any underlying intrinsic-evidence

---

[3]    Google does not argue that, even under the Board's (allegedly erroneous) construction, the Board erred in holding that Robertson does not render obvious the "gliding . . . away" limitation.

aspects of the Board's claim-construction analysis *de novo*, and any extrinsic-evidence aspects of that analysis for substantial evidence. *Id.* A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Here, the intrinsic evidence, *i.e.*, the claims, the specification, and the prosecution history, *see Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), is enough to support the Board's implicit construction of the disputed "gliding . . . away" limitation. "[T]he words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics*, 90 F.3d at 1582). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citation omitted). This is such a case.

The plain and ordinary meaning of "gliding," a simple term, is certainly more specific than Google's proposed construction, which equates "gliding" with the more general "moving." Google faults the Board for looking to dictionaries to support its determination that "gliding" connotes movement that is "smooth," "continuous," and possibly "quiet" or "effortless." *Decision*, J.A. 28; Google Br. at 43–44. But, as noted in *Phillips*, in cases like this, where Google does not argue that "gliding" is a term of art that would be understood any differently by a person of ordinary skill than a lay judge, "general purpose dictionaries may be helpful" in determining its plain and ordinary meaning. 415 F.3d at 1314. Accordingly, we agree with the Board that "gliding" is more specific than general "movement." Importantly, however, neither our nor the Board's ultimate construction rests on dictionary definitions.

That "gliding" cannot mean just any type of "moving" is further supported by the prosecution history. An earlier version of claim 1 recited, in part, that the functions of the claimed device were activated by "an object *moving* in a direction from a starting point that is the representation of the function." J.A. 1967 (emphasis added). During prosecution the applicant sought an examiner interview, proposing claim amendments that would eliminate the "moving" language and replace it with the at-issue "gliding . . . away" language. *See id.* at 2097. In its request for the interview, the applicant stated:

> For the interview, I would like to discuss the attached draft proposed amendment. Specifically, I would like to discuss the touch-and-*glide* thumb movement, variously referred to as "swiping", "rubbing", "gliding" and "sliding". This movement is described in claim 1 as "an object touching a location in the touch sensitive area at which the representation of the function is displayed and then *gliding* along the touch sensitive area away from the location." . . . I believe that the touch-and-*glide* movement of the claimed invention is different than the input movements disclosed in the cited prior art[.]

*Id.* at 2091 (emphases added). Ultimately, the examiner accepted the amendment and the applicant continued to maintain throughout the remainder of prosecution that the claimed gesture was a more specific movement akin to "rubbing," "swiping," and "touch-and-glide." *See, e.g., id.* at 2208; *id.* at 2210 (likening the claimed gesture to a prior art reference's disclosed "gliding movement," but distinguishing that reference by its functionality). That the applicant amended the claim to eliminate "moving" and replace it with "gliding" demonstrates that Google's proposed construction cannot be correct. *Ajinomoto Co. v. Int'l Trade Comm'n,* 932 F.3d 1342, 1351 (Fed. Cir. 2019) ("[W]hen a word is changed during prosecution, the change

tends to suggest that the new word differs in meaning in some way from the original word.").

We are further unpersuaded by Google's arguments that the specification does not support the Board's construction and that, under the Board's construction, limitation 1c lacks written description support. Google Br. at 29–32, 47–49. To be sure, Google is correct that "the specification is always highly relevant to the claim construction analysis" and "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (cleaned up). But here, the construction adopted by the Board is not inconsistent with the specification. Although the specification generally describes that the claimed functions can be activated when the device detects "movement" of an object, *see, e.g.*, '879 patent at Abstract, it nowhere forecloses a claim to any particular *type* of movement, such as "gliding." Thus, this is not a case where the specification evidences a disavowal or intentional disclaimer of the plain and ordinary meaning of the disputed term. Nor is it a case in which the applicant acted as its own lexicographer to redefine a commonly understood term. *See Phillips*, 415 F.3d at 1316 ("[O]ur cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. . . . In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor." (internal citation omitted)). Moreover, that the specification does not use the term "gliding" is not dispositive, as there is no requirement that the specification disclose the claim language *in haec verba*. *See, e.g.*, *Trustees of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016) (citing *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012)).

We therefore agree with the Board that, based on the intrinsic evidence, "gliding . . . away" does not simply mean "moving." Because we are satisfied that the intrinsic evidence is enough to support the Board's implicit claim

construction, we need not further address the extrinsic evidence. We therefore affirm the Board's claim construction, and hence its conclusion that the claims were not shown to be unpatentable as obvious.

## CONCLUSION

We have considered Google's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the Board's decision that Google failed to show the challenged claims to be unpatentable.

## **AFFIRMED**